**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

_____

| | | |
|---|---|---|
| **ALICIA GOOLSBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.** |
| | ) | |
| **CITY OF MONROE,** | ) | |
| **BETH THOMPSON, Individually,** | ) | |
| **and in her Official Capacity as** | ) | |
| **Finance Director of the City of** | ) | |
| **Monroe,** | ) | |
| **LES RUSSELL, individually, and** | ) | |
| **in his Official Capacity as Human** | ) | |
| **Resources Director of the City of** | ) | |
| **Monroe,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

_____

## <u>COMPLAINT</u>

NOW COMES Plaintiff ALICIA GOOLSBY ("Goolsby" or "Plaintiff") through undersigned counsel and makes her claims against Defendants, City of Monroe ("City" or "Employer"), Beth Thompson, Individually ("Thompson"), and Les Russell ("Russell"), Individually, collectively ("Defendants"), showing the Court as follows:

## SUBJECT MATTER JURISDICTION

### 1.

This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e *et seq.*, as amended ("Title VII"), for employment discrimination based on race and retaliation. Jurisdiction is specifically conferred on the court by 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

### 2.

This action is also brought pursuant to the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), as amended, for race and retaliation discrimination, as well as through 42 U.S.C. § 1983, the Equal Protection Clause, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §1988.

### 3.

These claims are federal questions under 28 U.S.C. § 1331, and jurisdiction and venue are proper in this court.

## PERSONAL JURISDICTION

### 4.

Defendant, City of Monroe is a Georgia municipal corporation.

### 5.

Mayor John Howard or other officer authorized to accept service may be served at 215 N. Broad Street, Monroe, Georgia 30655 (Walton County).

6.

The City of Monroe at all relevant times employed approximately 234 employees.

7.

Beth Thompson is a resident of Georgia and may be served at her workplace at 215 N. Broad Street, Monroe, Georgia 30655 (Walton County).  She is believed to be a resident of Walton County, Georgia.

8.

Les Russell is a resident of Georgia and may be served at his workplace at 215 N. Broad Street, Monroe, Georgia 30655 (Walton County).  He is believed to be a resident of Walton County, Georgia.

## **FACTS OF THE CASE**

9.

On or around March 27, 2017, Goolsby was hired by City of Monroe as a cashier.

10.

Goolsby's employment with the City of Monroe was terminated July 2, 2020.

11.

Goolsby worked under Monica Simmons (African-American female) from the time of Goolsby's hire until August 29, 2019, when Simmons departed from City of Monroe employment.

12.

Kathleen Lewis is a white female cashier at the City of Monroe, who was offered a customer service position and declined it prior to the position being offered to Goolsby on or about August 20, 2019.

13.

Around the time of Goolsby's termination, Kathleen Lewis (See paragraph 10) was able to see more extensions (had greater permissions) in Wufoo (Forms Software) than Goolsby.

14.

Around the time of Goolsby's termination, Caitlan Talford, another white female cashier at the City of Monroe, was also able to see more extensions (had greater permissions) in Wufoo (Forms Software) than Goolsby.

15.

Beth Thompson, a white female, was at all relevant times Finance Director for the City of Monroe.

16.

Les Russell, a white male, was at all relevant times Human Resources Director for the City of Monroe.

17.

Logan Propes, a white male, was at all relevant times City Administrator for the City of Monroe.

18.

Amy Dier, a white female, was promoted to a customer service position given to and taken away from Goolsby on or around September 19, 2019.

19.

At the time of Goolsby's termination, Terrie Giles, a white female, was Goolsby's supervisor.

20.

Around the time of Goolsby's termination, Hayden Stowe, a white female, was Finance Assistant at the City of Monroe.

21.

Shakira George (African-American female) was employed by the City of Monroe prior to Goolsby's employment and also terminated without written warning and under suspect circumstances/allegations.

22.

The earliest date discrimination took place, as reported on Goolsby's EEOC charge, was September 3, 2019.

23.

Goolsby filed her prior EEOC charge against the City of Monroe (410-2019-08940) December 12, 2019.  It is attached to her present charge, which is Exhibit A hereto, as the last page of Exhibit A.

24.

Goolsby did not file a suit after her prior charge, and thus this is Goolsby's first suit against the City of Monroe.

<u>July 2, 2020 Termination Meeting</u>

25.

On July 2, 2020, Goolsby was called into the conference room at her workplace at the City of Monroe by Beth Thompson, Finance Director, to meet with Thompson and Les Russell, Human Resources Director.

26.

Russell said that the reason for Goolsby's termination was "making too many mistakes."

27.

Goolsby infrequently received emails from Hayden Stowe, notifying her when something was wrong (e.g., shortage or overage of deposit bag), but prior to July 2, 2020 she had never been informed of any alleged infraction which would lead to her termination.

28.

Goolsby told Russell she had never received any warnings or indication that she might be terminated.

29.

Russell said that he was not required to inform Goolsby of her mistakes.

30.

Goolsby was not allowed to count out her till drawer after Russell informed her that her employment was being terminated.

31.

Goolsby's till was balanced on the day of her termination, and she was not given an opportunity to prove this.

32.

Goolsby learned from Shakira George, an African-American who had worked at City of Monroe before Goolsby was hired, that George was fired in circumstances similar to those of Goolsby's termination, i.e., without warning and based on doubtful allegations.

33.

George had also worked under Beth Thompson.

<u>Prior EEOC Charge</u>

34.

On August 20, 2019, Goolsby was offered a customer service position by her the supervisor Ms. Simmons.

35.

She was excited to begin this new role.

36.

She had been working as a cashier since her hire date with the City of Monroe.

37.

Although Goolsby had been given customer service-oriented duties on a frequent basis, her title had not been officially changed.

38.

The pay for a customer service position is at least five percent (5%) more than that of a cashier.

39.

Goolsby was proud to be receiving recognition, along with a pay increase, for her work, particularly since her duties prior to her promotion by Ms. Simmons had been approximately fifty percent (50%) customer service and fifty percent (50%) cashier.

40.

Goolsby gladly accepted the customer service position that she was offered by Ms. Simmons.

41.

Kathleen Lewis, a white female, was offered the position prior to it being offer to Goolsby, but Ms. Lewis declined to accept the customer position.

42.

On or about August 3, 2019, just two weeks into Goolsby's new position in customer service, she was removed from that position by Beth Thompson (white female), the Finance Director.

43.

That same day of August 3, 2020, Goolsby spoke with Les Russell, Human Resources Director (white male) in his office, about Ms. Simmons' promotion offer, the denial of the promotion by Ms. Thompson, and the fact of the job posting being removed right after Goolsby emailed Ms. Thompson.

44.

After filing a grievance, Goolsby spoke with Mr. Russell.

45.

Russell stated that the director of finance, Ms. Thompson needed to repost the customer service position and that Ms. Simmons had no authority to offer the customer service position to Goolsby.

46.

Goolsby spoke with Ms. Thompson about this.

47.

Thompson informed Goolsby that she was unaware that Ms. Simmons had offered the customer service position to Goolsby.

48.

The position was then reposted on or about September 4, 2019.

49.

However, the position was removed on August 3, 2019 with no explanation.

50.

Ms. Thompson was inconsistent about why she took the posting down.

51.

Ms. Thompson stated, "The job post had been up a week."

52.

Mr. Russell and Logan Propes, City Administrator, conducted an internal investigation due to Goolsby's complaint.

53.

Russell and Propes attempted to make it appear as though the posting was posted longer than it initially was.

54.

However, Goolsby had photographic evidence to support her contention.

55.

On September 19, 2019, Goolsby learned that Amy Dier (white female) had been promoted to the customer service position.

56.

Ms. Dier had been moved from her cashier position to customer service.

57.

On or about December 2019, Goolsby filed an EEOC Charge (first charge), alleging her demotion from customer service to cashier was based upon her race (African-American).

58.

A grievance hearing was held on November 12, 2019.

59.

Prior to the hearing, Goolsby was informed that the hearing would be open to the public and streamed on YouTube.

60.

However, this was not the case.

61.

The hearing was not streamed on YouTube.

62.

Goolsby, believes one reason why the hearing was not streamed on YouTube to the public was the photographic and recorded evidence she had

concerning the job notice posting and its subsequent speedy removal.

63.

After filing her initial EEOC charge, Goolsby was no longer allowed to work in customer service.

64.

She also began to experience that Mr. Russell and others in her direct line of supervision harbored animosity towards her as a result of her having filed her initial EEOC charge and spoken out.

65.

One example is Goolsby's being written up for emailing the Mayor about rates/ late fee improvement ideas that were concerns of the citizens/customers.

66.

Another example is Goolsby's being written up for not putting the correct time on her punch out sheet.

67.

Another example is Goolsby's being left out/not being communicated to about new workflow/operations.

68.

Goolsby returned to work following the EEOC hearing in December 2019 and continued to perform her duties as cashier.

Protected Activity Prior to Termination

69.

June 16, 2020, Goolsby spoke with Mr. Russell, about not being communicated to by her then-current supervisor Terrie Giles (white female) on department changes and Ms. Giles' breach of confidentiality about the write-ups that took place late December 2019.

70.

Goolsby also noted Russell's lack of addressing her issues and his prior cover up of the job posting from her previous EEOC charge.

71.

As a cashier, Goolsby's duties were to be responsible for receiving and processing counter payments.

72.

The City used a software program, Wufoo, which allowed for the

customization of forms, collection of data , etc.

73.

Late June 2020, approximately three days before Goolsby was terminated, she inquired about not being able to see Wufoo.

74.

Goolsby was informed by Ms. Thompson that she was only set up to see extensions (for cashiers not trained in customer service) based upon her position and duties as a cashier.

75.

However, Kathleen Lewis (white female) also a cashier, was able to see more extensions than Goolsby.

76.

Caitlan Talford (white female), hired by the City of Monroe approximately a year after Goolsby was hired, is another cashier who was also able to see more extensions than Goolsby was.

77.

Goolsby requested an explanation from Ms. Thompson as to why she could not see the extensions that her fellow cashiers were able to see and which

roles were able to see more extensions.

78.

However, Ms. Thompson never provided Goolsby with a response.

79.

Goolsby is an African-American and thus a member of a protected class.

80.

Goolsby was well-qualified for her position and very experienced in it.

81.

Williams qualifications have never been questioned.

82.

Defendants' treatment of Goolsby was based on one or more discriminatory and unlawful grounds as described herein.

## COUNT I: DISPARATE TREATMENT RACE DISCRIMINATION UNDER TITLE VII

83.

Goolsby, an African-American, and a member of a protected class, suffered

the discriminatory treatment described herein based on her race.

84.

Paragraphs 1 to 82 are incorporated herein by reference.

85.

Plaintiff's job skills and positive and productive work habits made her an asset to Defendant City of Monroe.

86.

Plaintiff's mistreatment and termination, material conditions of employment, have been improper and based on racial animus and actions of Defendant City of Monroe, its employees, officers, managers, and agents.

87.

The reason given for Goolsby's termination was pretextual.

88.

The real reason was race discrimination.

## COUNT II: DISPARATE IMPACT RACE DISCRIMINATION UNDER TITLE VII

89.

Plaintiff, an African-American and member of a protected class, suffered a disparate impact because of facially neutral policies of Defendant City of

Monroe, as more fully set out in Paragraphs 1 to 82, which Paragraphs are incorporated herein by reference.

90.

The policies that resulted in Plaintiff's mistreatment and termination have a disparate impact on African-American employees.

91.

The disparate impact of the policies Plaintiff is accused of violating is demonstrated by her termination, the termination of Shakira George, and the lesser impact of the policies on City employees not in Plaintiff's protected class.

## COUNT III: HOSTILE WORK ENVIRONMENT RACE DISCRIMINATION UNDER TITLE VII

92.

Goolsby, an African-American and a member of a protected class, suffered the discriminatory treatment described herein based on her race.

93.

Paragraphs 1 to 82 are incorporated herein by reference.

94.

Plaintiff's job skills and positive and productive work habits made her an asset to Defendant City of Monroe.

95.

Plaintiff's mistreatment and termination, material conditions of employment, have been improper and based on racial animus and actions of Defendant City of Monroe, its employees, officers, managers, and agents.

## COUNT IV: RETALIATION DISCRIMINATION UNDER TITLE VII

96.

The Allegations contained in Paragraphs 1 to 82 above are incorporated herein by reference.

97.

Plaintiff engaged in statutorily and constitutionally protected activity by complaining in good faith about the illegal race discrimination perpetrated by Defendants.

98.

Defendant retaliated against Plaintiff by taking adverse employment actions against her because she engaged in statutorily and constitutionally protected activity.

99.

Plaintiff has suffered damages as a proximate result of Defendants'
retaliation against her, for which she is entitled to recover.

100.

Plaintiff suffered the discriminatory treatment described herein based on
her opposition—including her EEOC charges and internal and attempted public
complaints—to what she believed were unlawful and discriminatory employment
practices.

101.

Plaintiff's job skills and positive and productive work habits made her
an asset to Defendant City of Monroe.

102.

Plaintiff's mistreatment has been improper and based on her protected
statements to Defendant, its employees, officers, managers, and agents, on her
EEOC charge, and attempted public statements.

## COUNT V: INTENTIONAL RACE DISCRIMINATION UNDER SECTION 1981 and 1983

103.

The above Title VII points related to race discrimination are incorporated herein by reference as if recited verbatim.

104.

The allegations contained in Paragraphs 1 through 82 above are incorporated herein by reference.

105.

Defendants intentionally discriminated against Plaintiff in the terms and conditions of her employment based on race.

106.

Defendants treated Plaintiff disparately from other employees on the basis of race and created a racially-hostile work environment both of which violate 42 USC Sec. 1981 as enforced by 42 USC 1983 in violation of Plaintiff's federally-protected rights.

107.

Defendants' intentional race discrimination has proximately caused Plaintiff to suffer economic and other damages in an amount to be determined at trial.

108.

Defendants acted with malice, and reckless indifference to Plaintiff's federally protected rights, for which punitive damages should be assessed against Defendants.

## COUNT VI: RETALIATION DISCRIMINATION UNDER SECTION 1981 AND 1983

109.

The Allegations contained in Paragraphs 1 to 82 above are incorporated herein by reference.

110.

Plaintiff engaged in statutorily and constitutionally protected activity by complaining in good faith about the illegal race discrimination perpetrated by Defendants.

111.

Defendant retaliated against Plaintiff by taking adverse employment actions against her because she engaged in statutorily and constitutionally protected activity in violation of 42 USC Sec. 1981 as enforced by 42 USC Sec. 1983.

112.

Plaintiff has suffered damages as a proximate result of Defendants'
retaliation against her, for which she is entitled to recover.

**COUNT VII: 42 USC SEC. 1983 VIOLATION OF EQUAL
PROTECTION**

113.

The Allegations contained in Paragraphs 1 to 82 above are incorporated
herein by reference.

114.

The Equal Protection Clause of the Fourteenth Amendment Prohibits
discrimination against public employees on the basis of race.

115.

At all times relevant to this Complaint, Defendants were acting under the
color of state law.

116.

Defendants intentionally discriminated against Plaintiff in the terms and
conditions of her employment based on race.

117.

Defendants treated Plaintiff disparately from other employees on the basis of race.

118.

Defendants created a racially-hostile work environment.  Defendants' actions also resulted in the termination of Plaintiff.

119.

Defendants' actions violate the Equal Protection Clause of the Fourteenth Amendment of the Constitution and are actionable pursuant to 42 USC Sec. 1983.

120.

Defendants' intentional race discrimination has proximately caused Plaintiff to suffer economic and other damages in an amount to be determined at trial.

121.

Defendants acted with malice and reckless indifference to the federally protected rights of Plaintiff for which punitive damages should be assessed against Defendants.

## COUNT VIII: 42 USC SEC. 1985 – CONSPIRACY TO DEPRIVE PLAINTIFF OF HER CONSTITUTIONAL RIGHTS

122.

The allegations contained in Paragraphs 1 to 82 above are reincorporated herein by reference.

123.

Defendants conspired for the purpose of depriving Plaintiff of equal protection of the laws, and to deprive Plaintiff of equal privileges under the laws through their plan to intentionally discriminate against Plaintiff on account of Plaintiff's race.

124.

Two or more Defendants did agree to directly or indirectly deprive Plaintiff because of her race of her equal protection of the laws and equal privileges of the laws.

125.

Defendants did act to further the object of the conspiracy by taking steps to intentionally discriminate against Plaintiff on the basis of her race.

126.

Defendants' acts in furtherance of their conspiracy caused Plaintiff to

suffer injuries for which she is entitled to recover.

127.

Plaintiff has suffered economic and other damages for which she is entitled to recover.

128.

Defendants acted with malice and reckless indifference to Plaintiff's federally protected rights, for which punitive damages should be assessed against Defendants.

## COUNT IX: 42 USC SEC. 1983 – VIOLATION OF FIRST AMENDMENT RIGHTS

129.

The Allegations contained in Paragraphs 1 through 82 above are incorporated herein by reference.

130.

At all times relevant to this Complaint, Defendants were acting under the color of state law.

131.

Defendants while acting under color of state law as officials for City of

Monroe intentionally violated Plaintiff's constitutional rights under the First Amendment to the United States Constitution by taking adverse employment actions against Plaintiff for exercising her right of free speech.

132.

Plaintiff spoke out and attempted to speak out further on a matter of public concern by voicing her concerns about intentional race discrimination being perpetrated by Defendants.

133.

Defendants intentionally retaliated against Plaintiff for speaking out on matters of public concern by taking adverse employment actions against her.

134.

Defendants' conduct was done with malice and reckless indifference to Plaintiff's federally protected rights.

135.

Defendants actions violated the rights of Plaintiff protected by 42 USC Sec. 1983 and the First and Fourteenth Amendments of the United States Constitution, and proximately caused Plaintiff to suffer damages.

136.

Plaintiff has suffered and is entitled to recover compensatory, punitive

and all other damages permitted by law against Defendants for their violations.

## COUNT X: 42 USC SEC. 1988 – ATTORNEY'S FEES

137.

The allegations contained in Paragraphs 1 to 82 above are incorporated herein by reference.

138.

Because Defendants violated Plaintiff's rights protected by 42 USC Sec. 1983, 1981, 1985, 2000(e), *et seq.*, and the United States Constitution, Plaintiff is entitled to recover her attorney's fees and expenses as provided by 42 USC Sec. 1988 and other relevant federal statutes.

## CHARACTERIZATIONS OF DISCRIMINATION

139.

Defendant's conduct constitutes unlawful workplace discrimination based upon race and retaliation because no other factors present explain or justify why Defendant City of Monroe, its employees, managers, officers, and agents, held Goolsby in such low regard as to mistreat, assault, and terminate Goolsby despite her good work and workplace contributions.

140.

Defendant City of Monroe's work environment was hostile to Goolsby.

141.

This is an integrated complaint, so the factual allegations are not exclusive to particular claims and each allegation supports each claim. Thus, for example, if the finder of fact or law should determine that the material covered under race discrimination was in fact motivated because of retaliation and not race, the facts alleged should be construed as supporting the race and retaliation counts as well.

142.

The treatment Goolsby was subjected to amounted to discrimination in the terms, conditions, and privileges of Goolsby's employment.

143.

The discrimination complained of herein is the cause of the treatment administered overtly and under guise of pretext and is also the proximate cause of Goolsby's damages.

**DAMAGES AND DYNAMICS**

144.

Goolsby suffered loss of wages she otherwise would have earned because of promotion and pay raises from City of Monroe. Such loss was because of the actions and inactions of Defendant.

145.

Since her termination, Goolsby has suffered loss of wages, also because of the actions and inactions of Defendant.

146.

Goolsby suffered loss of increased benefits she otherwise would have had because of the actions and inactions of Defendant.

147.

Since her termination Goolsby has suffered loss of benefits, also because of the actions and inactions of Defendant.

148.

Goolsby suffered and continues to suffer emotional distress and pain and suffering because of the actions and inactions of Defendant.

149.

Goolsby is entitled to punitive damages because of the actions and inactions of Defendant.

150.

Defendant's actions with regard to Goolsby were with malice.

151.

Defendant acted with reckless indifference to Goolsby's rights.

152.

Defendant' actions are disparate treatment by treating Goolsby poorly because of her race and by treating Goolsby differently and worse than similarly situated employees not in her protected class(es).

153.

Defendant's policies, even if facially neutral, had a disparate impact on African-American employees, who fared much worse than the Caucasian employees under the policies.

## ADMINISTRATIVE HISTORY

154.

On September 7, 2020, an EEOC Charge was filed and given EEOC Charge Number 410-2020-08217, attached to Plaintiff's original Complaint as Exhibit A and incorporated herein by reference as if recited verbatim.

155.

On May 11, 2022, Plaintiff was given her Right to Sue Letter, attached hereto as Exhibit B.

WHEREFORE, Plaintiff Goolsby demands that she have trial by jury and judgment against Defendant as follows:

a) For lost wages in an amount to be determined at trial;

b) For lost benefits in an amount to be determined at trial;

c) For compensatory damages in an amount to be determined at trial;

d) For front pay in an amount to be determined at trial;

e) For punitive damages in an amount to be determined at trial;

f) For injunctive relief in ordering Defendants to rehire and cease

discriminatory mistreatment of Plaintiff;

g) For such injunctive relief as the law may allow toward an order requiring

Defendants to refrain from future discriminatory treatment of other

individuals similar to Plaintiff;

h) For her costs and expenses;

i) For her attorney's fees; and

j) For such other and further relief as is just, proper, or equitable.

This 9th day of August, 2022.

/S/ Drew Mosley
Drew Mosley
Attorney for Plaintiff
GA Bar No. 526406
Drew Mosley, LLC
279 W. Crogan Street
Lawrenceville, GA 30046
Office Phone (678) 225-0098
Office Fax (678) 221-0230
Email: drew@mlawmail.com