## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| **ALICIA GOOLSBY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 3:22-CV-82 (CAR)** |
| | : | |
| **CITY OF MONROE; BETH** | : | |
| **THOMPSON; and LES RUSSELL;** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### ORDER ON DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

Plaintiff Alicia Goolsby ("Goolsby") asserts employment discrimination and retaliation claims under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 against the City of Monroe (the "City"), City finance director Beth Thompson ("Finance Director Thompson"), and City human resources director Les Russell ("HR Director Russell") (collectively "Defendants"). Goolsby claims Defendants unlawfully terminated her employment and retaliated against her on the basis of race and protected speech in violation of her First and Fourteenth Amendment rights.

Currently before the Court is Defendants' Motion for Partial Dismissal of Goolsby's Complaint. Defendants seek dismissal of all claims against the individual defendants and all claims except the Title VII disparate treatment race discrimination and retaliation claims against the City. Having considered the relevant facts, applicable law,

and the parties' briefs, Defendants' Motion [Doc. 6] is **GRANTED.** Goolsby's claims against Finance Director Thompson and HR Director Russell are **DISMISSED**. Goolsby's Title VII disparate impact and hostile work environment, § 1981, § 1983, and § 1985 claims against the City are **DISMISSED**. Goolsby's Title VII disparate treatment race discrimination and retaliation claims against the City will go forward.

## BACKGROUND

The facts, as alleged in Goolsby's Complaint, are as follows: On or about March 27, 2017, the City hired Goolsby (African American) as a cashier.[1] While employed as a cashier, Goolsby also performed customer service oriented duties on a "frequent basis."[2] On August 20, 2019, Goolsby's supervisor—Monica Simmons ("Simmons")—offered Goolsby a customer service position.[3] The customer service position included an "at least five percent" increase in compensation compared to that of a cashier.[4] Goolsby accepted the position.[5]

Two weeks after Goolsby began her new position, Finance Director Thompson removed her from the position, and Goolsby returned to her duties as a cashier.[6] The same day, Goolsby filed a grievance and spoke with HR Director Russell to voice her

---

[1] Plaintiff's Complaint ("Complaint"), [Doc. 1] at ¶ 7.
[2] *Id*. at ¶ 37.
[3] *Id*. at ¶ 34.
[4] *Id*. at ¶ 38.
[5] *Id*. at ¶ 40.
[6] *Id*. at ¶ 42.

concerns.[7] HR Director Russell informed Goolsby that Simmons did not have the authority to offer her the customer service position, and thus, Finance Director Thompson needed to repost the position.[8] Goolsby then spoke with Finance Director Thompson who told Plaintiff that she was unaware Simmons had offered her the position.[9]

The position was reposted and later removed without explanation.[10] HR Director Russell and City Administrator Logan Propes ("Propes") conducted an internal investigation of Goolsby's complaint.[11] Goolsby alleges that while HR Director Russell and Propes "attempted to make it appear as though the posting was posted longer than it initially was," she had photographic evidence to support her contention.[12] A grievance hearing was held on November 12, 2019.[13] Approximately one month later, Goolsby learned Amy Dier (Caucasian) was promoted from her cashier position to the customer service position.[14]

On December 12, 2019, Goolsby filed her first charge of discrimination with the EEOC (the "Initial Charge").[15] In her Initial Charge, Goolsby recounted how she was

---

[7] *Id.* at ¶ 43, 44.

[8] *Id.* at ¶ 45.

[9] *Id.* at ¶ 47.

[10] *Id.* at ¶ 48-51. The Court notes many of the dates provided in Goolsby's Complaint appear to contain typographical errors. *See Id.* at ¶ 34, 42, 43, 48, 49. As discussed below, because the events on these dates form the basis of Goolsby's initial EEOC charge which she failed to timely file suit on, the events are independently time barred and may only be used as background evidence. Thus, the dates for these events will not impact the Court's adjudication of the present Motion.

[11] *Id.* at ¶ 52.

[12] *Id.* at ¶ 53-54.

[13] *Id.* at ¶ 58.

[14] *Id.* at ¶ 55-56.

[15] *Id.* at ¶ 57.

initially offered the promotion, had the offer revoked, and voiced complaints about the alleged discrimination.[16] Goolsby believed that she was being discriminated against on the basis of race and retaliated against for engaging in protected activity.[17] Following its investigation of Goolsby's Initial Charge, the EEOC issued a Dismissal and Notice of Rights.[18] Goolsby took no timely legal action following the EEOC's Dismissal of her Initial Charge.[19]

After returning to her position as a cashier, Goolsby was no longer allowed to work in customer service.[20] Goolsby alleges HR Director Russell "and others" in her direct line of supervision harbored animosity towards her for filing the charge and speaking out.[21] Thereafter, Goolsby was written up once for emailing the Mayor about rates and late fee improvement ideas and a second time for not putting the correct time on her punch out sheet.[22] Additionally, Goolsby contends that she was "left out/not being

---

[16] December 12, 2019, Charge of Discrimination (the "Initial Charge"), [Doc. 2-1] at p. 5. Goolsby was later allowed to apply and interview for the customer service position, but ultimately was not selected.

[17] Id.

[18] EEOC Dismissal and Notice of Rights, [Doc. 6-1] (emphasis and capitalization in original). While the Dismissal and Notice of Rights was not attached to Goolsby's Complaint, the Court may nevertheless consider it as it is incorporated by reference. Goolsby filed the December 12, 2019, Charge of Discrimination contemporaneously with her Complaint. See [Doc. 2-1]. The EEOC's dismissal of her Charge and Notice of Rights is undoubtedly central to Goolsby's claims—both factually and legally. Defendants attached the Dismissal and Notice of Rights to their Motion to Dismiss, and Goolsby did not dispute its contents. Thus, the Dismissal and Notice of Rights is incorporated by reference and may be properly considered. See Davis v. Clayton, No. 7:17-cv-02076-LSC, 2018 U.S. Dist. LEXIS 120666, at *6-7 (N.D. Ala. July 19, 2018) (citing Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007)); see also Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

[19] Complaint, [Doc. 1] at ¶ 24.

[20] Id. at ¶ 63, 68.

[21] Id. at ¶ 64.

[22] Id. at ¶ 65-66.

communicated to about new workflow/operations."[23] On June 16, 2020, Goolsby spoke with HR Director Russell to address various concerns including her then supervisor Terrie Giles' failure to communicate department changes and breach of confidentiality concerning her previous write ups[24] and HR Director Russell's failure to address her concerns and "his prior cover up of the job posting from her previous EEOC charge."[25]

In June of 2020, shortly before her termination, Goolsby inquired about why she could not see certain "extensions" in Wufoo—a software program used by the City for the customization of forms and collection of data.[26] Finance Director Thompson informed Goolsby she was only set up to see extensions based upon her position and duties as a cashier.[27] But Goolsby alleges two white female cashiers, Kathleen Lewis and Caitlan Talford, were able to see more extensions than she was.[28] Goolsby asked Finance Director Thompson for an explanation but did not receive a response.[29]

On July 2, 2020, Goolsby was terminated. Finance Director Thompson and HR Director Russell informed Goolsby that she was being terminated for "making too many mistakes."[30] Goolsby acknowledges having received emails from Hayden Stowe[31]

---

[23] *Id.* at ¶ 67.
[24] *Id.* at ¶ 79.
[25] *Id.* at ¶ 71.
[26] *Id.* at ¶ 72, 73.
[27] *Id.* at ¶ 74.
[28] *Id.* at ¶ 75-76.
[29] *Id.* at ¶ 77-78.
[30] *Id.* at ¶ 25-26.
[31] Goolsby does not identify Hayden Stowe's position within the City or provide additional context.

notifying her of previous issues, including a shortage or overage of her deposit bag, but contends she was never informed of any infractions which would lead to her termination.[32] HR Director Russell responded that he was not required to inform Goolsby of her mistakes.[33]

On September 7, 2020, Goolsby filed her second Charge of Discrimination (the "Second Charge") forming the basis of this action.[34] On May 11, 2022, the EEOC issued a Determination and Notice of Rights for Goolsby's Second Charge.[35] On August 9, 2022, Goolsby filed the present action against the City, Finance Director Thompson, and HR Director Russell for employment discrimination. Goolsby assets claims for disparate impact, disparate treatment, hostile work environment, and retaliation under both Title VII and §1983; a conspiracy claim under §1985; and §1983 claims for violations of her First and Fourteenth Amendment rights. Defendants now move for partial dismissal of Goolsby's Complaint. Specifically, Defendants seek dismissal of all claims except her Title VII disparate treatment race discrimination and retaliation claims against the City. Their Motion is now ripe for ruling.

---

[32] Complaint, [Doc. 1] at ¶ 27-28.
[33] *Id*. at ¶ 29.
[34] September 7, 2020, Charge of Discrimination (the "Second Charge"), [Doc. 2-1] at p. 1-4.
[35] Determination and Notice of Rights, [Doc. 2-2] at p. 1-4.

## LEGAL STANDARD

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled facts in a plaintiff's complaint.[36] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[37] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[39]

## DISCUSSION

As explained below, Goolsby's §1983 and §1985 claims against the City, Thompson, and Russell are barred by the statute of limitations and must be dismissed. Additionally, her Title VII disparate impact and hostile work environment and §1981 claims against the City, as well as all claims against Thompson and Russell, must be dismissed because they fail to state a claim upon which relief may be granted.

## I.        Statute of Limitations

---

[36] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[38] *Id.*
[39] *Twombly*, 550 U.S. 544, 556 (2007).

Goolsby asserts §1983 and §1985 claims against the City, Finance Director Thompson, and HR Director Russell alleging they each violated, and collectively conspired to violate, her First and Fourteenth Amendment rights. These claims, however, are barred by the statute of limitations.[40]

"The residual personal-injury statute of limitations of the forum state applies to §1983 and §1985 actions."[41] In Georgia, the limitations period is two years.[42] The limitations period begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."[43] Here, the two-year limitations period for Goolsby's §1983 and §1985 claims began to run on July 2, 2020, when the City terminated her employment.

Due to the COVID-19 pandemic, the Georgia Supreme Court entered multiple orders extending statute of limitations deadlines. In its fourth Order, the Georgia Supreme Court declared "[t]he 122 days between March 14, 2020 and July 14, 2020, or any portion of that period in which a statute of limitation would have run, shall be excluded from the calculation of that statute of limitation."[44] The Georgia Supreme Court issued

---

[40] Defendants' Motion for Partial Dismissal, [Doc. 6] at p. 15-16.

[41] *Fortson v. Georgia*, 601 F. App'x 772, 774 (11th Cir. 2015) (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (per curiam)).

[42] *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (per curiam); O.C.G.A. § 9-3-33.

[43] *Lovett*, 327 F.3d at 1182 (citation and internal quotation marks omitted).

[44] Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf (July 10, 2020).

additional guidance on the tolling of statutes of limitations under the statewide judicial

emergency orders.[45] The Guidance Order states:

> [T]he tolling of a statute of limitation suspends the running of the period of limitation, but it does not reset the period of limitation. If the period of limitation for a particular cause of action commenced prior to March 14, 2020—that is, if the "clock" had started to run before the entry of the Chief Justice's order—the running of the period of limitation was suspended on March 14, and the running of that period will resume when the tolling provision of the March 14 declaration has expired or is otherwise terminated.[46]

The tolling provision for statutes of limitations expired on July 14, 2020.[47] Thus,

the 12 days from July 2, 2020, and July 14, 2020, are excluded from the Court's

calculations, and the statute of limitations for Goolsby's §1983 and §1985 claims ran on

July 14, 2022. Because Goolsby did not file her Complaint until August 9, 2022, her §1983

and §1985 claims in Counts VII, VIII, and IX are barred by the statute of limitations and

must be dismissed.

## II.     Claims Against the City

### A.  Title VII Claims (Counts I – IV)

---

[45] *See* Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04 06 20.pdf (Apr. 6, 2020).

[46] *Id.*

[47] *See* Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf (July 10, 2020).

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[48] Goolsby asserts four claims under Title VII against the City for race discrimination—disparate treatment (Count I), disparate impact (Count II), hostile work environment (Count III), and retaliation (Count IV).

The City seeks to dismiss Goolsby's disparate impact and hostile work environment claims (Counts II and III) but does not seek to dismiss her disparate treatment and retaliation claims (Counts I and IV). The City does, however, appear to seek dismissal or to bar Goolsby from relying on any time barred allegations from her Initial Charge to support her disparate treatment and retaliation claims. As explained below, Goolsby's disparate impact and hostile work environment claims fail to state a claim, and although her time barred allegations are not independently actionable, they may be used as background evidence to support the remaining claims.

### 1. Disparate Impact

Plaintiff fails to state a claim for disparate impact discrimination under Title VII. Establishing a prima facie case of disparate impact discrimination involves two steps.

---

[48] 42 U.S.C. § 2000e-2(a)(1).

"First, the plaintiff must identify the specific employment practice that allegedly has a disproportionate impact. Second, the plaintiff must demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination."[49] While Goolsby need not establish a prima facie case to survive a motion to dismiss, her Complaint must still "set out enough factual content to allow a court to draw the reasonable inference" that the defendant is liable for the alleged discrimination.[50] It fails to do so.

Goolsby alleges she is a member of a protected class and "suffered a disparate impact because of facially neutral policies of Defendant City of Monroe."[51] She contends the "policies that resulted in [her] mistreatment and termination have a disparate impact on African-American employees."[52] But not only does she fail to identify any practice or policy with particularly—but she also fails to allege sufficient facts to establish that the City's practice or policy had a "significant adverse effect on a protected group."[53] Competently alleging disparate impact "requires factual allegations — usually a statistical disparity — demonstrating a disparity in treatment between groups so

---

[49] *Spivey v. Beverly Enters.*, 196 F.3d 1309, 1314 (11th Cir. 1999) (internal citations omitted).

[50] *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1023 (11th Cir. 2016); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

[51] Complaint, [Doc. 1] at ¶ 89.

[52] *Id*. at ¶ 90.

[53] *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 497-98 (11th Cir. 2015) (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807-08 (11th Cir. 2010)).

significant that it supports an inference that discrimination is the cause."[54] As the Supreme Court held in *Smith v. City of* Jackson, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'"[55] Goolsby's complaint contains no such allegations.

In her response, Goolsby contends the facially neutral employment practice resulting in a disparate impact is the "mistake monitoring" practice discussed in paragraph 26 of her Complaint.[56] The Court is unconvinced. Paragraph 26 states: "Russell said that the reason for Goolsby's termination was 'making too many mistakes.'"[57] Goolsby's Complaint contains no factual allegations to support the existence of a "mistake monitoring" practice within the City or any resulting disparate impact of such. Furthermore, Goolsby contends:

> There is a significant statistical disparity in the racial composition of employees being harmed by the practice and those not being harmed by the practice or benefiting therefrom. For example, Goolsby, an African American, was terminated. Kathleen Lewis, white, on the other hand, was offered a customer service position and able to see more Wufoo extensions. Caitlan Talford, white, was also able to see more Wufoo extension than Goolsby. Shakira George, African-American, was also terminated. Amy

---

[54] *Id.* (citing *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314-15 (11th Cir. 1994)).
[55] *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005).
[56] *See* Goolsby's Response, [Doc. 10] at p. 4.
[57] Complaint, [Doc. 1] at ¶ 26.

Dier, white, was promoted to a customer service position. Of the African American employees listed one hundred percent (100%) were terminated. Of the white employees listed, one hundred percent (100%) thrived and were not terminated. This is not a normal statistical distribution. There is an enormous, chasmic statistical disparity. The causal nexus between the practice and the statistical disparity is reflected in at least the termination of Goolsby based on the mistake monitoring practice.[58]

Goolsby's attempt to create a credible statistical disparity out of a cherry-picked, four-person sample is entirely inadequate and without merit.[59] Thus, her disparate impact claim fails and must be dismissed.

### 2.   *Hostile Work Environment*

Goolsby also fails to state a hostile work environment claim against the City. "A harassment or hostile environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[60] The Eleventh Circuit has

> repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or

---

[58] *See* Goolsby's Response [Doc. 10] at p. 4-6 (internal citations omitted).

[59] *Id.*; *Compare* the allegations in Goolsby's Complaint with *Pouyeh*, 625 F. App'x at 497-98 ("Pouyeh's complaint contains no such factual allegations, only the bare assertion that the Board has 'excluded systematically Iranian doctors' and that one of Pouyeh's friends from Iran was also denied a residency position at UAB's School of Ophthalmology. That is not enough.").

[60] *Alexander v. Opelika City Sch.*, 352 F. App'x 390, 392 (11th Cir. 2009) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.[61]

"The requirement that the harassment be 'severe or pervasive' contains an objective and subjective component. Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive."[62] In evaluating the objective severity of the harassment, the Eleventh Circuit has instructed courts to examine: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."[63]

Goolsby's allegations, accepted as true, fail to allege harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. Goolsby alleges her job skills and work habits made her an asset to the City, and her mistreatment and termination were improper and based on racial animus.[64] Goolsby cites the following conduct in support of her hostile work environment claim: "Mr. Russell and others in her direct line of

---

[61] *Miller*, 277 F.3d at 1275 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).
[62] *Alexander*, 352 F. App'x at 392 (citing *Miller*, 277 F.3d at 1276).
[63] *Id*.
[64] Complaint, [Doc. 1] at ¶ 94-95.

supervision harbored animosity towards her"; she was "written up for emailing the Mayor about rates/ late fee improvement ideas that were concerns of the citizens/customers" and for "not putting the correct time on her punch sheet"; and she was "left out/not being communicated to about new workflow/operations."[65]

But these scant allegations fail to demonstrate severe or pervasive harassment based on a protected characteristic. The Supreme Court has noted Title VII is not a "general civility code."[66] "Teasing, offhand comments, and isolated incidents that are not extremely serious will not amount to discriminatory changes in the terms and conditions of employment."[67] The Eleventh Circuit, for example, has stated that "racial slurs allegedly spoken by coworkers had to be so 'commonplace, overt and denigrating that they created an atmosphere charged with racial hostility.'"[68] The isolated incidents and conclusory allegations in Goolsby's complaint pale in comparison and cannot demonstrate severe or pervasive harassment.[69] Thus, Goolsby's hostile work environment claim fails and must be dismissed.

---

[65] *Id*. at ¶ 64-67.
[66] *Alexander*, 352 F. App'x at 392 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).
[67] *Mendoza*, 195 F.3d at 1245; *see also See McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) ("Title VII prohibits discrimination; it 'is not a shield against harsh treatment at the work place.' Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex discrimination case by accusation.").
[68] *Alexander*, 352 F. App'x 390, 392 (citing *Edwards*, 49 F.3d at 1521).
[69] *Compare* Goolsby's allegations with those in *McCann v. Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008) (finding evidence insufficient to support a claim for hostile work environment where the plaintiff alleged

3. *Allegations from the Initial Charge*

Defendants argue many of the allegations forming the basis of Goolsby's disparate treatment and retaliation claims are time barred due to Goolsby's failure to timely file suit following her Initial Charge.[70] The Court agrees any time-barred acts are not independently actionable. But these allegations may be used as background evidence to support her timely claims. In *AMTRAK v. Morgan,* the Supreme Court held:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.[71]

To the extent Goolsby seeks to base any of her Title VII claims on her initial demotion from the customer service position in 2019, including any failure to promote claim, such claims would be time-barred. Each of Goolsby's Title VII claims must rely on a timely filed, independently discriminatory act to be viable. At this stage, it is unclear which specific acts "form the basis" of Goolsby's Title VII race discrimination and

---

"white employees made derogatory racial comments about blacks, harsher discipline was received by black employees, and complaints of discrimination were subject to retaliation and not investigated.").

[70] Defendants' Motion for Partial Dismissal, [Doc. 6] at p. 1.

[71] *AMTRAK v. Morgan,* 536 U.S. 101, 113 (2002).

16

retaliation claims and which are offered as background evidence. Thus, the evidence Goolsby can use in support of her claims will be decided at a later stage.

B. § 1981 Claims Against the City (Counts V and VI)

Defendants next contend Goolsby's § 1981 race discrimination and retaliation claims against the City fail to establish municipal liability and must be dismissed. The Court agrees. The Eleventh Circuit has held that "§ 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981."[72] Thus, the Court analyzes her § 1981 claims against the City under a § 1983 framework.[73]

A local government entity may not be found liable under § 1983 for an injury inflicted solely by its employees or agents, even when that injury results in a constitutional violation.[74] Instead, a local government entity "is liable only when [its] 'official policy' causes a constitutional violation."[75]  To establish this, a plaintiff must "identify either (1) an officially promulgated county policy or (2) an unofficial custom or

---

[72] *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)).

[73] The Court notes that because Goolsby's § 1981 claim against the City must be brought under § 1983, it too is likely bared under Georgia's two-year statute of limitations for § 1983 claims. *See Butt v. Zimmerman*, No. 5:21-cv-00214-TES, 2021 U.S. Dist. LEXIS 236435, at *12 (M.D. Ga. Oct. 25, 2021). But, for the reasons discussed, the Court concludes Goolsby failed to state a claim for municipal liability, and thus, needs not address the timeliness of her § 1981 claims against the City.

[74] *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).

[75] *Id*.

17

practice of the county shown through the repeated acts of a final policymaker for the county."[76]

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement."[77] Counts V and VII contain only conclusory allegations devoid of factual support against a collective group of "Defendants" and fail to plead even the bare elements of a *Monell* claim.[78] Instead, Goolsby appears to raise substantially the same conclusory allegations previously raised in other counts. She alleges: "Defendants intentionally discriminated against Plaintiff in the terms and conditions of her employment based on race";[79] "Defendants treated Plaintiff disparately from other employees on the basis of race and created a racially-hostile work environment"[80]; "Plaintiff engaged in statutorily and constitutionally protected activity by complaining in good faith about the illegal race discrimination perpetrated by Defendants"[81]; and "Defendants retaliated against Plaintiff by taking adverse employment actions against her because she engaged in statutory and constitutionally protected activity."[82]

---

[76] *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).
[77] *Iqbal*, 556 U.S. at 687 (citing *Twombly*, 550 U.S. 544 (internal citations omitted)).
[78] Complaint, [Doc. 1] at ¶ 103-112.
[79] *Id*. at ¶ 105.
[80] *Id*. at ¶ 106.
[81] *Id*. at ¶ 110.
[82] *Id*. at ¶ 111.

18

But Goolsby fails to allege "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."[83] Additionally, the vague allegations fail to "specifically identify which policy or practice, if any, caused the alleged injuries."[84] Goolsby contends the City "had a custom or policy that constituted deliberate indifference" to her right to be free from race discrimination.[85] In support of her argument, Goolsby cites to her allegation that HR Director Russell and Propes "attempted to make it appear as if [the position] was posted longer than it was."[86] The Court is unconvinced.

"Alleging vaguely that a policy, custom or practice exists is not enough; rather plaintiffs must specifically identify which policy or practice, if any, caused the alleged injuries."[87] Furthermore, an allegation of an isolated incident—such as misrepresenting how long the position was available online—without more, is insufficient to establish municipal liability.[88] Thus, Goolsby's allegations fail to state a claim for municipal liability, and her claims against the City must be dismissed.

## III.    Remaining Claims Against Thompson and Russell

---

[83] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

[84] *Searcy v. Ben Hill Cnty. Sch. Dist.*, 22 F. Supp. 3d 1333, 1341 (M.D. Ga. 2014) (internal quotation marks and citation omitted).

[85] Goolsby's Response, [Doc. 10] at p. 7-8.

[86] *Id.*; Complaint [Doc. 1] at ¶ 51-53.

[87] *Searcy*, 22 F. Supp. 3d at 1341.

[88] *Grech*, 335 F.3d at 1330, n.6 (2003) (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("A single incident would not be so pervasive as to be a custom or practice" and "proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.").

Goolsby asserts claims under Title VII and § 1981 against Finance Director Thompson and HR Director Russell in their individual and official capacities. As explained below, Goolsby's claims against Finance Director Thompson and HR Director Russell in their official capacities must be dismissed as duplicative of her claims against the City; her Title VII claims must be dismissed because relief under Title VII does not extend to individual employees; and her § 1981 claims fail to state a claim.

A.  <u>Official Capacity Claims</u>

Goolsby's claims against Finance Director Thompson and HR Director Russell in their official capacities must be dismissed as duplicative of her claims against the City. It is well established that a suit against an individual in their official capacity is the functional equivalent of a suit against the government entity he or she represents.[89] Furthermore, the relief authorized under Title VII is against the employer, not individual employees whose actions would constitute a violation of Title VII.[90] Here, Goolsby named her employer, i.e., the City as a party to this action. Thus, her official capacity claims

---

[89] *See McMillian v. Monroe County,* 520 U.S. 781 (1997); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991).
[90] *Busby,* 931 F.2d at 772.

against Finance Director Thompson and HR Director Russell are unnecessary and duplicative.[91]

B. Title VII Claims (Counts I – IV)

Any Title VII claim asserted against Finance Director Thompson and HR Director Russell in their individual capacities must be dismissed. As Goolsby acknowledges, "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, *regardless* of whether the employer is a public company or a private company."[92]

C. § 1981 Individual Capacity Claims (Counts V and VI)

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."[93] Additionally, § 1981 prohibits an employer from retaliating against an employee in response to the employee's complaint of race-based discrimination.[94] Goolsby asserts claims under § 1981 against Finance Director Thompson and HR Director Russell in their individual capacities contending they intentionally discriminated against her on the basis

---

[91] *See, e.g., Riles v. Augusta-Richmond Cty. Comm'n*, No. CV 116-214, 2017 U.S. Dist. LEXIS 133238, at *7 (S.D. Ga. Aug. 21, 2017); *Lynn v. United Techs. Corp.*, 916 F. Supp. 1217, 1219 (M.D. Ala. 1996).

[92] *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006).

[93] *Hampton v. Amedisys Ga., LLC*, No. 22-11275, 2023 U.S. App. LEXIS 598, at *3 (11th Cir. Jan. 11, 2023) (citing 42 U.S.C. § 1981; *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975)).

[94] *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998).

of race and illegally retaliated against her for complaining about the alleged discrimination. Finance Director Thompson and HR Director Russell contend Goolsby's allegations fail to state a claim.[95] The Court agrees.

### 1. Race Discrimination

"The elements of a section 1981 claim in the employment context are the same as the elements of a Title VII claim."[96] To state a claim for race discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly situated employees outside his protected class more favorably than she was treated; and (4) she was qualified for the job.[97] To survive a motion to dismiss, Goolsby "must provide enough factual matter (taken as true) to suggest intentional discrimination."[98] A pleading will not "survive dismissal when it consist[s] of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."[99]

---

[95] While the parties briefed Goolsby's §1981 claims against Thompson and Russell under a qualified immunity analysis, the Court finds it unnecessary to conduct a qualified immunity analysis as Goolsby's allegations fail to state a claim against Thompson and Russell. Nevertheless, because Plaintiff failed to state a claim for a constitutional violation, Russell and Thompson would also be entitled to qualified immunity.

[96] *See Harrison v. Belk, Inc.*, 748 F. App'x 936, 941 (11th Cir. 2018).

[97] *Burke-Fowler v. Orange Cnty. Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006)

[98] *Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 917 (11th Cir. 2015) (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)).

[99] *Jackson*, 372 F.3d at 1270-71.

Goolsby fails to allege sufficient facts to support a reasonable inference of intentional discrimination by either Finance Director Thompson or HR Director Russell. Count V contains the following conclusory allegations: "Defendants intentionally discriminated against [Goolsby] in the terms and conditions of her employment based on race," "treated [Goolsby] disparately from other employees on the basis of race," and "created a racially-hostile work environment."[100] But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[101]

These allegations are naked assertions of broad discrimination. Indeed, the Court cannot even discern what specific act Goolsby challenges. Thus, Goolsby's allegations fail to support a reasonable inference of intentional discrimination, and her §1981 race discrimination claim must be dismissed.

### 2. *Retaliation*

To state a plausible claim for retaliation under § 1981, Goolsby must allege that she engaged in a "statutorily protected activity" that is causally connected to a

---

[100] Complaint, [Doc. 1] at ¶ 105-106.
[101] *Iqbal*, 556 U.S. at 687 (citing *Twombly*, 550 U.S. 544 (internal citations omitted)).

"materially adverse action" taken by the defendant.[102] "An employee's complaint about discrimination constitutes protected activity if the employee could 'reasonably form a good faith belief that the alleged discrimination existed.'"[103] The complaint may be formal or informal.[104] "In retaliation cases, a materially adverse action is any action that may dissuade a reasonable worker from making or supporting a discrimination charge."[105]

But Goolsby fails to sufficiently allege Finance Director Thompson and HR Director Russell took any materially adverse action causally connected to her EEOC charge. Goolsby again asserts only conclusory allegations in Count VI. Goolsby alleges she "engaged in statutorily and constitutionally protected activity by complaining in good faith about the illegal race discrimination perpetrated by Defendants," and "Defendant [sic] retaliated against [Goolsby] by taking adverse employment actions against her because she engaged in statutorily and constitutionally protected activity."[106]

These allegations are simply a threadbare, formulaic recitation of the elements and are wholly insufficient to state a claim.[107] Goolsby's allegations fail to identity any specific materially adverse action, which defendant allegedly took the action, or allege that the

---

[102] *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1176 (11th Cir. 2016).
[103] *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (citation omitted).
[104] *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016).
[105] *Harris v. Fla. Agency for Health Care Admin.*, 611 F. App'x 949, 952 (11th Cir. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).
[106] Complaint, [Doc. 1] at ¶ 110-111.
[107] *Iqbal*, 556 U.S. at 687 (citing *Twombly*, 550 U.S. 544).

specific action taken was causally connected to the filing of her Initial Charge. Furthermore, the allegations are devoid of any specific factual basis to support Finance Director Thompson's or HR Director Russell's personal involvement. Because Goolsby fails to state a plausible claim for individual liability, her §1981 retaliation claims against Finance Director Thompson and HR Director Russell must be dismissed.

## IV.   Punitive Damages

Various counts in Goolsby's Complaint seek to recover punitive damages against a collective group of "Defendants."[108] Defendants correctly contend, and Goolsby now concedes, punitive damages are not recoverable against a city in a § 1983 action.[109] Likewise, government entities are "exempt from punitive damages under Title VII."[110] Therefore, to the extent Goolsby's Complaint seeks to recover punitive damages against the City, such efforts fail as a matter of law.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Partial Dismissal [Doc. 6] is **GRANTED**. Goolsby's claims against Finance Director Thompson and HR Director

---

[108] Complaint, [Doc. 1] at ¶ 108, 121, 128, 136, 149, 155.

[109] *Murphy v. Flagler Beach*, 846 F.2d 1306, 1309 n.5 (11th Cir. 1988) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)); Defendants' Motion for Partial Dismissal, [Doc. 6] at p. 17; Goolsby's Reply, [Doc. 10] at p. 11.

[110] 42 U.S.C. § 1981a(b); *see also Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1322 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *McGriff v. Decatur County Sheriff's Office*, 2005 U.S. Dist. LEXIS 16866, at * 2 (M.D. Ga. Aug. 9, 2005) ("Title VII plaintiffs may not recover punitive damages against governments and government agencies or political subdivisions.").

Russell are **DISMISSED**. Goolsby's Title VII disparate impact and hostile work environment, § 1981, § 1983, and § 1985 claims against the City are **DISMISSED**. Goolsby's Title VII disparate treatment race discrimination and retaliation claims against the City will go forward.

**SO ORDERED,** this 1st day of September, 2023.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT